Good morning, Your Honor. Good morning. Peter Flournoy, appearing for the appellant TRANS WORLD MARINE, which I know is a very important-sounding name, but it's actually a family-owned corporation, John McGrange and his wife, after whom his vessel is named. The first thing I'd like to do is reserve five minutes of my time for rebuttal, if you may. Just watch the clock. To please the Court, I think even the government would agree that, this case has one issue, and that basic issue is, was it reasonable for the National Marine Fisheries Service, and I'll refer to them as NMFS, if that's okay, was it reasonable for NMFS to deny my client's claim for economic assistance? Well, but it's a little bit different here. For us, you have to show it's arbitrary and capricious what they did to win. All right, was it arbitrary and capricious for National Marine Fisheries Service to turn down my client's claim, based solely on the fact that he submitted his information on state logbook forms, as opposed to federal logbook forms, particularly in view of the fact that the information on both sets of logbook forms is essentially the same, and in addition to that, that the information from the State of California logbook forms, while initially turned into the State of California, then went to the same Hawaiian office, the same federal database, under an agreement to share data on the North Pacific Longline Fisheries. On those logbooks, do the logbooks do anything to establish ownership of the vessel? Both types of logbooks require that the name of the owner of the vessel be on the logbook, but beyond that, I don't believe they do. And the logbooks also account for the type, number and type, volume and type of fish? That's correct. And also what fish is targeted, as well as how many hooks are used in targeting the fish, what depths they're set at. There is, I did not make it part of the excerpts of the record. However, the reference... There is a form of comparison that was filed in the papers with the motion for summary judgment that indicates the various things that are the same in both. And just quickly, it's the vessel name and number, beginning of the set, ending of the set, the gear description, target species, bait used, species... What does it say about the name of the owner? I'm sorry? What does it say about the identity? It just has a place for that. What is the designation? In other words, if I'm a captain on a vessel but I don't own it, whose name appears on the logbook? Actually, it's the fisherman's name that goes in that place on both forms. So it wouldn't necessarily be the owner? That's correct. It would be the captain of the vessel. It would be the captain of the vessel, would be the actual person fishing. I apologize for that misstatement. By the time that your client made the request, was the information already in the database for the fishery? The NIMBY, whatever you want to call it? Well, that's an interesting question that was not actually argued before the district court. And that goes to the third or fourth issue that I raised in my opening brief, and that is if that's what the district court's decision was based on, the answer to that very question, then that was not something, I mean, that's a factual question. That was not among the material facts, the agreed material facts, that we went into the summary judgment hearing. So there's no evidence of that is what you're saying? I mean, we don't want to argue evidence outside the record. We're reviewing the records, so don't, you know. The closest thing to evidence in that regard is the declaration filed by the defendants of Russell Ito, who is the man in Hawaii who was in charge of collecting and compiling the data for the longline fisheries. His declaration is. . . I think the only records in possession of my office that document fishing by the F slash B Tathena during the eligibility period of January 1, 1999 to November 29, 1999 are Pacific offshore longline logfoot forms. Is that what he put in the record? Is that what Mr. Ito said? That is correct, Your Honor. So if your argument is that that contains the equivalent of federal data, so he's saying that it is in the database or not? He's saying that it is in the database. All right. And he's saying not only is he saying it's in the database, he's saying that it's in the database pursuant to an agreement we have with the state of California so we can get that information into the database so we can get a complete picture of what's going on in the North Pacific longline fishery. It also says there's nothing over one of the periods, though. I'm sorry? Let's see. One of the documented periods was. . . My office has never received federal logbooks covering fishing during the eligibility period. And I think that one of the trips he puts outside the area that was covered. That's correct, Your Honor. I mean, the situation was that depending on where he was going to land his fish, depending on where he was going to go fishing, determine which logbook he was going to fill out. And that's also why in the reply brief, as an addendum to it, I put the letter from Sven Fogner indicating that there was a lot of confusion during this period of time as to what forms you were actually supposed to be filling out. Isn't your argument also that depending on where he landed the fish, California required California state logbooks. That's correct. If he was outside the coast of Hawaii, he had to use the federal logbooks. But the information he was required to file got to the same place it had to get, no matter which logbook he used. That's correct. That's correct, Your Honor. And the closures that affected these fishermen actually wasn't just within, for example, Hawaii's EEZ. It went out onto the high seas areas. And this is the area where my client fished. And he landed his fish for two of the trips during the season in California, was told by the state of California, you have to fill out a state of California logbook. He did. There wasn't really any problem getting that information into the federal database. Let me ask you a question. Why didn't he fill out a federal logbook too, I guess, when he did the California form? Why didn't he do both? He did not do both. Why did he not? Because he was not required to. Not required by California, not required by the federal government either. Not required by the federal government. There's a footnote that I could cite you to in my opening brief that indicates that it's generally the National Marine Fisheries Service policy that if you fill out a state-required logbook that's required according to a program, that you don't have to also fill out a federal logbook. Well, I mean, maybe it's not an illegal violation. But let's just say they have this program where they have a certain amount of money and they decide who qualifies for it. And not everyone's going to qualify for it. And they're the agency that has the expertise and they decide this is what we want for documentation if you're going to get the money. And they say the federal logbooks. And that's how they interpret that that's what logbook means. It means federal. Why is that arbitrary and capricious? Yeah, they could have said federal or state. But that doesn't mean just because they didn't, how does that make it arbitrary and capricious because they required federal? Actually, Your Honor, I have two answers to that question. One of them is that there has to be a rational connection between the requirement. And there has to be an expressed rational connection between the requirement and, you know, what the reason, what the rationality is for it. But there is with the federal, if they had said, but there is with the federal law. They have a choice of that they could do either or, but they choose to do one. And why, you know, they don't have to do it the way that you want them to do it. Well, that's, I mean, I can't argue with that except to say that I think in this case when you're talking about, well, it's a federal document, the equivalent of a state document, that's not really a decision where you have to defer to the expertise of the particular agency involved. But more importantly, let's contrast the requirement for a federal logbook form with what the same agency did when it decided to differentiate between swordfish fishermen and those fishermen who were fishing for tuna. Now, there is at the time in the Federal Register notice the rationale underlying that decision. There's no such rationale ever expressed underlying the decision to require a federal logbook. And more importantly than that, it was fine. And I've admitted, we've admitted that it might be very reasonable for them to require a federal logbook form. But if you don't then allow under the review process where there was no requirement for a federal logbook form, it didn't say federal logbook form, if you say that for the review process you have to have a federal logbook form, it really undercuts any ability to appeal, any ability to bring in additional information, any ability to show that in fact you were a fisherman who fished in that fishery. And that's the reason for calling to your attention the case that was handed down recently, Alaska Trojan Partnership case. Because there the question was somewhat similar in the sense that National Marine Fisheries Service had this whole scheme to determine how many landings a vessel had as to whether it would qualify for a limited entry program. And there the court looked at it and basically said, we're interested in the substance, not the form. I mean, we're interested in the fact that on the form you can see that different landings were made, even though it's on a single fish ticket form. And the court said, you know, that information is there. The reason that you want that information is basically so you can manage the fishery. So what you're really interested in is how many catches, how many different sets there were on the particular species that was the subject of that fishery management plan. The logbook that's required to be filled out had to be filled out within 72 hours of making the catch. Is that correct? Actually, I believe that's the federal regulation. Again, since that was not really a material fact, that was not a fact that was argued at the district court. I believe, however, that the requirements under the state logbook program are basically the same. Could he have rectified the problem by filing a federal logbook at a later point in time? I guess is my question. He really, I suppose, had he known that there was going to be this program, he could have taken a whole set of federal logbook forms, taken the information on the state logbook forms, put them on the federal logbook forms and turn those in as well. But there is a provision in the regulations to guard against people trying to skew their records one way or the other to become a swordfish claimant or a tuna fisherman's claimant, that any alterations, additions, amendments to the logbooks had to be done by June, I believe it was 2001, which was before this program was announced to the public. So basically, as I understand it, the regulation for eligibility that they articulated required or specified federal logbooks to a universe of documentation that had already been submitted. In other words, it wasn't prospective, it was retrospective. That's correct. So in deciding who got to qualify, you had to have opted, instead of following the approved practice of submitting California when you're offloading in California and federal in Hawaii, you would have had to have been prescient enough to know that you better file, take advantage of the California option, which you say was sanctioned by the federal government. You better have filed those, because otherwise you are screened out from a federal benefit program. I believe I followed that, and I think you're right, Your Honor. In other words, there's nothing, as I understand it, your client could have done to bring himself within what later became the eligibility factor, and so you relied on the review process to use the state forms to show that you functionally qualified, even though it was under state forms rather than under federal forms. That's correct, Your Honor. That's correct. And that's a better way to answer the question, I think, than the way I did. But that is correct. I was just trying to make sure I understood the answer. Okay. If you want to save your time, you said you did. Is this less than five minutes? Yes, I did. I'm going to have to get a different style of talk here. Thank you. Yes. Thank you, Your Honor. May it please the Court, Mark Freeman for the federal government in this matter. I'd like to pick up, if I may, with Judge Fischer's question, including my opponent's argument. And there's a critical misconception I think we need to address here. There is no and has never been any practice by which fishermen filing state logbooks with California state authorities were not required to file federal logbooks. We cited the regulations in our brief. The Transworld Marine, in its reply brief, doesn't address those regulations. They don't explain how the unequivocal language of those regulations didn't require them to file a federal logbook. And actually, before I get too far away from it, just a housekeeping matter, I want to note for the Court that the regulation on that score that we cited in our brief has been renumbered since the time that we filed our briefs. The content hasn't changed, but it now appears at 50 CFR 665.14. I think in our brief it was 660.14, but it's the same regulation. And it says, any fisherman fishing under a federal fishing permit, including the two types of fishing permits the Transworld Marine has, a Hawaii longline limited access permit or a federal high seas fishing permit, must file a federal logbook with the National Marine Fisheries Service within 72 hours of landing. Now, that's why it was completely reasonable for the Secretary in this case to say, I'm going to condition, choose as eligibility criteria the logbooks that every fisherman who would be eligible for this program was already required to comply with, or was already required to supply to the agency under preexisting federal law. Let's just stop there. Yeah. What you're saying is that the regulation required it. Now, is there no evidence that the federal government either explicitly or implicitly sanctioned a state filing only? There's no evidence, Your Honor. Okay. So how is it that folks like the claimant here got away for so many years not filing federal logbooks? I'm not sure, Your Honor. I would note that the agency using the federal logbook database, as they said they would use in the federal register notice, affirmatively identified 118 fishing vessels that had fished in the relevant area for the appropriate swordfish or tuna, the right species, during the eligibility period. But those were people who offloaded in California and filed federal forms? I believe most of them offloaded in Hawaii. Right. How many offloaded in California? I'm not aware of anyone other than Transworld Marine who did. So then the question is, what is the purpose then of the protocol that allows the California forms to be accepted in lieu of a federal logbook? Well, there is no such protocol, Your Honor. That's my point. Why were they filed? They filed a state logbook form pursuant to state law. They were also required to file a federal logbook form. I understand. They filed it with California. Why does it wind up in the federal database? That has to do with something completely unrelated to this program, and that is the National Marine Fisheries Service, acting on behalf of the United States, has an obligation to collect data for international fishing monitoring programs and also for scientific purposes to attempt to figure out what kind of fish are being caught where. And the California logbook requirement, as I understand it, applies to some fishing that is not covered by federal regulations. And that's because some fisheries are regulated only by state bodies, some fisheries are regulated only by federal bodies, and some regulate both. So the data does end up being, in some cases, duplicative. But that's why the federal secretary, in deciding how to apportion essentially federal largesse, was not required to look to state data and could look to data that every fisherman who was going to be eligible for this program anyway had to file under preexisting federal law. Let me ask you this question. The requirement also was that one had to be in good standing with the federal government to file for this request also. That wasn't why they denied the request. They denied the request because there wasn't a federal law book. It wasn't. You're not following a federal law book. You just didn't follow a federal law book. So if they're not doing what they're supposed to do, wasn't that the basis to deny the claim? Your Honor, candidly, I suspect that was part of the agency's motivation. That's not the reason that the agency stated in the letter. But the reason that the agency stated in the letter was more than adequate, which is the express eligibility requirements required federal law books. You didn't file federal law books. Now, I mean, I think it's important to take a step back here and realize this is an APA case. What the secretary was doing was implementing a congressional directive to allocate $3 million, and the quote is, to provide economic assistance to fishermen and fishing communities affected by closures. Is there any dispute that this person qualified in terms of the substance that he, in fact, was fishing in the area, aside from the fact that he relied on a California law book, that what he caught and the time in which he caught it qualified him for what Congress intended compensation to go for? Your Honor, I don't believe that the numbers would disqualify him, but I just, with respect. The answer is, you're not disputing that, if his law books had been specified, that he would have been within the universe of beneficiaries of congressional or death. Yes, and when I say I'm not disputing that, it's because we didn't get to that stage. I know you didn't, but I haven't seen it in any of the government briefs. I'm suggesting that this is a fake claim. No, that's right. We're not making any such claims. So let's assume that the Secretary had a legitimate reason to specify federal law books. The Secretary also put forward a review process. Yes. And the review process says, applicants pursuing review must present written vessel law book documentation that was filed in a timely manner in accordance with NMFS regulation or USCG or state or territorial documents to support claims of eligibility. Now, why under that process doesn't he qualify? Because he has submitted state documents to support claims of eligibility, and I don't understand that there's been any rejection of it because it wasn't timely. It didn't meet 72 hours, and that it wasn't that that data wasn't in a federal database. No, that's right, Your Honor, but I think it's important to look at that language. It does refer to state and territorial documents, but as we explained in our brief, there was a function for state and territorial documents under the language of this regulation, which was to establish ownership of the fishing vessel in question. Well, that's true, but it wasn't just to establish it. No, in fact, it was, Your Honor. Your Honor, I would just refer the court to page 2 of the excerpts of record, which is 66 Federal Register 58441. In the subheading of the regulation entitled eligibility, the agency is very clear about what it's saying. It says we're going to require, one, proof of ownership and, two, proof of harvesting. And then it explains that. Yes, it says that recipients owned a vessel registered for use under a Hawaii long line limited access permit during the eligibility period. That's not in dispute here. No, and that's the. Okay, and it says, two, harvested Pacific Palaeontic Management PMUS species. Float fishing tuna. Using the vessel during the eligible period as documented by log books, timely submitted to MNMFS. Yes, Your Honor. So the purpose of the eligibility was not just ownership. It was also to make sure that they had caught the fish. And then it says in the review process, I'll read again. Appellants pursuing review must present written vessel log book documentation that was filed in a timely manner or state or territorial documents to support claims of eligibility. Yes, Your Honor. There's no dispute of ownership here. How does that regulation say it relates only to claims of ownership when log books? Now, you may take issue with counsel for the appellant. The log books don't necessarily evidence ownership. It may be the captain of the vessel whose name is on it. If you look at the two samples attached to the plaintiff's complaint, which is in the record, the state log book identifies the fisherman. The fisherman is not necessarily the owner of the vessel. Right. In fact, that was the basis on which one of another applicant for this program's claim was rejected. The owner was not the one who had owned the boat during the relevant time. So you're saying we're supposed to construe this regulation as meaning that it's only, that the state forms only go to ownership and can't apply to the other prong of eligibility. In fact, Your Honor, with respect, just from an APA posture, this court is not supposed to construe the regulation. Well, wait a minute. We have to go by the plain language of it. That's right. You were supposed to read out of the plain language that there's a review. Wait a minute. Let me finish. I'm fully aware of the APA and the standard of review, but there's also substance here, and there's the regulation addressing people who have engaged in a practice which fundamentally isn't in dispute. He's part of the target that Congress intended to get some of this money. Okay. So you're carrying out a congressional mandate, a purpose, to give money to people who have been adversely affected by a court order by the district court in Hawaii. Correct? Correct. All right. So then you say, here's the criterion or criteria for eligibility. And if you have, if we don't pick it up from our records, we're going to give you a review process. Yes. Okay. So the person has to go with what he's got. Yes. That's a retrospective qualifying criteria. Yes. Okay. You had to be an owner of a vessel that fished in the area, and you had to catch the fish within the relevant time period. And when you come to us to review your eligibility, you have to present either the federal documents or state documents, and you want us to say that mandate, that direction to review applicants, has to be read as relating only to ownership, notwithstanding there are two criteria for eligibility. No, Your Honor. And we have to defer to that under the APA. No. Your Honor, if I may, there are a few things there. And I didn't mean to suggest the court, of course, is unaware of the APA posture. My point is simply the Secretary's interpretation of this sentence, which I'll be the first to admit is not the clearest sentence in the regulation, was certainly reasonable. And that's because why is it reasonable? Because what it says in the review process is to show, if you weren't one of the 118 people initially identified, you have the opportunity to come in and show that you qualified, you met requirement one and requirement two. And the eligibility section of the regulation makes clear different documentation was to be accepted for each of those two prompts. So the first thing is that regulation is very clear about this. In page two of the excerpts of record, it says, for purposes of ownership of the vessel, the Secretary said, we will accept documentation certificates issued by the United States Coast Guard, thus the reference to USCG, or state or territorial documents for ownership. And then it says, as to vessel harvesting, as in whether you caught fish in the relevant time in the relevant place, it says, vessel harvesting determinations will be documented by and solely based upon logbooks submitted to the National Marine Fishery Service. So when you then get to the review process and it says, you may, if you're challenging the agency's failure to select you, submit federal logbooks or state documents, the Secretary quite reasonably interpreted that, I think, to say, look, you might have been rejected because you didn't own it, in which case we'll take state or territorial documents. You might also have been rejected because you didn't fish in the right place. And as the eligibility criteria in that section of the rule make absolutely clear, to establish harvesting, we require federal logbooks. Excuse me. Yes. It said logbooks. It didn't say federal logbooks. It says. It said logbooks submitted to this database, basically, that he wound up getting into the database in the last place anyway, didn't he? Well, he has certainly. He said logbooks submitted to this place, which California submitted on behalf of him, right? It says logbooks submitted. Your Honor, the language is, for each owner who submitted to NMFS logbooks documenting the catch. He never submitted. It doesn't say federal logbook, though, does it? Well, Your Honor, I think there are a few points. The agency then goes on to say, if there were any doubt about what logbooks were in question, the agency goes on to say, NMFS requires vessels to submit federal catch and effort logbooks to document fishing activities with catch and species within 72 hours of landing. So the agency is clearly referring to its own regulations and the regulations requiring federal logbooks. Nowhere in here does the agency refer to or even mention state authorities. And it is not as though these documents filed by the state and federal authorities were, to state and federal agencies were precisely identical. If you look at the examples in the attached to plaintiff's complaint, the federal form has a box to check for whether there was an observer on board. The state form has no such box. The federal form requires a signature saying that I swear that the foregoing is true and correct. The state form doesn't require such a thing. And, of course, there's the entire background regulatory system whereby state false statements to a federal agency constitute a federal crime under 18 U.S.C. 1001. Now, we're not remotely suggesting that such a thing occurred here, but the point is it was reasonable for the secretary to look to federal forms rather than state forms because of the background of that kind of federal regulation, because of what the forms had rather than what the state forms had, and because- But the state forms, the only thing that's relevant on the state forms, forget all that other observer stuff, the question is what forms do they need to establish that the claimant fits within the intended class? And you have several times acknowledged, I believe, that the California form filed by the ship owner here and submitted in turn to the federal agency, same agency, contains the two relevant data points that are relevant to this regulation. One, ownership, and two, catch. And those are what those forms are intended to capture and record. In response, there are two points. First, the federal form-excuse me, the state form does not indicate ownership. It indicates the name of the fisherman. That is not the same as the person- Okay, so it doesn't-so the regulation of the California form isn't even relevant to ownership. Well- That's what you're-you're saying, well, that's the only reason we would look at a state form was to establish ownership. No, we said we'd look at state-not state law books. So the agency is clear on this. We look at state proof of ownership. That's a title. That's registration with the United States Coast Guard is one of the things mentioned here. And if I may, if we're getting into specific textual analysis of the review process provision that you cited, Judge Fischer, the agency says we will look at written documentation that harvesting was filed in accordance with NMFS regulations or USCG or state or territorial documents. Now, states or territories might require, as California evidently did here, log books. But the United States Coast Guard does not. The only function of the United States Coast Guard in this regime was to document who owns a vessel. That may be. But there's at least that regulation on its face. You're going behind it. Maybe there's traction in that. But on the face of it, an applicant seeking review, as this person did, would read that as saying, you didn't pick me up, so I can submit a state form which documents the one thing that you have any concern about, and that is, did I really catch swordfisher to you? Your Honor, again, two points in response to that. All that that review process says, and I think it's important that that is structurally in the section saying review, not eligibility, all that that says is the kinds of documents that the agency will look at to determine whether an applicant is eligible. And, of course, every one of those documents listed in there. I agree. Yes. But every one of those documents listed in there would be eligible to, would be relevant to a claim of eligibility depending on the basis on which it was rejected. I don't disagree with you. You're trying to say, though, you can't use a California logbook to prove what it contains, i.e. catch. You can only use it if, in fact, you submit it for purposes of showing ownership, and you're saying, well, California doesn't require ownership. I suppose if the California logbook had an entry that said owner of vessel, then you're saying that would be okay. But it's not okay if it's for the content of the catch. It is, and that is because under the eligibility section of the regulation, the agency said very clearly we're requiring the logbook submitted to the National Marine Fisheries Service. And the logbooks were, in fact, submitted to the National Marine Fisheries Service. So the argument, they weren't submitted within 72 hours? No, the argument is that the agency in, and this is, again, on page two of the excerpts of record, it says that the owner of the vessel submitted to NMFS documents. He did. He did not, Your Honor. He submitted them to state authorities. Look, I recognize, if I may, that this is a claim that turns on, all the arguments in this case, turn on a certain degree of formality. But in this posture. I call it rigidity, but I understand APA. But underlying all of this is a congressional intent to give money to people like this claimant. If I may, the. That was the purpose. That's what the Secretary's entrusted with. He's got a fund, and the fund is to take care of people like this fisherman. And the government agency is saying no, because you didn't. The fund was. You didn't. You didn't turn in a logbook, and the way we read the regulation, we're going to screen you out, even though in substance you did everything that was permissible or allowed. Your Honor, under. And you can't change it, Mr. Claimant, because we didn't pick it up, we didn't enforce it, and you're stuck with the record you made. But you're also saying, though, that he should have been doing federal logbooks. Yes. And wasn't. Exactly. And one of the periods that we're talking about was outside the time period. That's correct. He was evidently aware of his federal logbook requirement, but didn't file them for December 1999 forward. Well, he doesn't deny it. He was aware. He said when he offloaded in Hawaii, filed the federal form, and when he offloaded in California pursuant to practice, he filed the California form. And the premise there, as I think Judge Callahan noted, is that there was no such practice. And the regulations that we've cited in our brief are absolutely clear about this. So he's been in violation of federal licensing law ever since he was using California. Yes. And the fact that the agency may not have taken enforcement action on that ground doesn't mean that it was unreasonable for the Secretary to say that as eligibility for this federal grant program, we were going to look to people who had complied with their federal obligations. All right. There's one more point, if I may add. Make it quick. Okay. Just on the point about congressional intent. I'm going to cut you some slack. Thank you, Your Honor. Because in the substance, I want you to get to the substance. And, of course, the Court would be fully authorized to cut me off of my time.  I would. But we won't exercise our discretion that way. Yes, Your Honor. You've pointed out that the purpose of this congressional program was to provide economic assistance to fishermen. That's true. But as the Secretary explained in the notice, there's $3 million here. It's not a lot of money. And the Secretary, for example, limited the program to people who had been fishing in this affected fishery only in the nine-month period before the injunction went into effect. And the stated explanation is on page 3 of the excerpts of the record. We know all of that. There was a dispute that this guy was part of the crowd. But the reason – but my point is that the Secretary sensibly determined that not everyone who could fall within – who had ever fished in this area, who could fall within these terms, would be entitled to benefits. We're not arguing about people who fall outside. We're talking about somebody who, on the facts that are documented by the documents he did file, actually does fit within the category. Within the nine-month period is no more or less an integral part of this application process than the federal logbook requirement. Now, they fall within the nine-month period, but they don't fall within the federal logbook requirement. And it wasn't unreasonable for the Secretary to insist on people who complied with that rule. Thank you. You have some rebuttal time. Your Honors, I'm going to disregard some advice that I was given as a very young lawyer. I probably should just sit down and say submitted. But I think there are a couple of points I'd like to make. Well, was your client required to submit federal logbooks during that period of time? No. He was only required to submit federal logbooks if he landed his fish in Hawaii. And the closest I have to answering the question or contradicting the statement that if he filed state logbook forms, he was not required to file federal logbook forms, is in my opening brief at page 8, footnote 3, where I quote. Let me ask you, if he was required, does that change your argument? If we look at the regulations and we say he was required, does that change your argument? No, for two reasons. And one of those reasons is there's no reason if he violated a federal statute over here that he should be penalized here. And also the federal regulations actually provided for that. If you had an outstanding fine or if you violated one of the National Marine Fisheries Services regulations, you had to pay that fine off before you could receive money under this program. That's one reason. The other is that the essence of the whole program was to help the fishermen who were affected. And it's basically a question of in terms of, you know, required to file a federal logbook, it's really a question of form over substance. And what we're looking at here, I think, is the substance. Again, that's why. Well, I see a difference between whether you have to sign something under penalty of perjury or you can just say whatever. Well, you know, that's a very interesting point. Because when you're giving away money, you know, I mean, then you could come back later and say, well, you weren't entitled to it and you lied on this form, and therefore you could do it as opposed to the California doesn't require that. Your Honor, I don't have it in mind, but I'd be happy to submit for the record the penalties for filling out improperly California logbook forms. They're equally as stringent, I believe, as the federal logbook forms. And I just had occasion to look at a federal logbook form, and although my review of it was hurried, I could not see where it said on there that it had to be signed under penalty of perjury. One of the things I did notice when I was looking at the state form, which was an answer to one of your questions, Your Honor, and that is that the California requirement is that the logbook be submitted within five days of the end of the long-run trip. So there is a requirement under California law that these logbooks be submitted in a timely manner. Well, but that makes it different than 72 hours, though, too. A difference without a fact. Well, I know, but when we're saying that they're identical, that is a difference. The basic requirement was that the information was in the federal database, and the information was in the federal database, and I think that's clear from Russell Ito's declaration. I mean, he acknowledges that he has the state forms that were filed by Trans World Marine. Now, the part that was outside the nine months, you're not contesting that? Wasn't part of your claim outside the nine-month period? No. No, there were forms, there were federal forms that were submitted, but they were outside of the nine-month period. I mean, that's not really relevant. What's relevant is whether the vessel and the fisherman was active during the period of time that the secretary and his discretion decided it made sense to look at in terms of what fishermen were affected by these federal closures that were subsequently handed down. I'd also like to just quickly point out in the reply brief I have as an addendum, a letter from Sven Fogner that went out in October of 1999, quite subsequent to the records that my client turned in for earlier trips during that period of time, that is clearly evidence of confusion between what forms were supposed to be filed and in effect announced that California... Was that in the record before the lower court? It was. California Fish and Game is aware... This is from the National Marine Fisheries Service to longline vessel owners. California Fish and Game is aware that the High Seas Fishing Compliance Act and implementing regulations require U.S. vessels operating on the high seas to obtain permits from and maintain and submit logbooks to NIMS. California does not want to maintain a duplicate program and therefore is eliminating its longline program. Hold on. This is a letter that was sent out a couple of months after the trips that my client completed. So there was clearly confusion. Oh, and the other reason for the sifting out people who may have owned a Hawaiian longline limited entry permit where there are a number of those permits that are inactive. They're just being held by people who might want to use them in the future. And the secretary wanted to be sure that those people were excluded. That was basically the requirement for the logbook to show the activity, the fishing, the actual fishing activity during this period of time as opposed to someone who had bought a limited entry longline permit and in a sense had banked it for future use. All right. Thank you. Counsel, both sides, we appreciate the argument. It's well argued and we'll consider the case submitted.
judges: Fisher, Callahan, Collins